Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have four appeals that are scheduled for oral argument this morning. I am Judge Wilson and I am in Tampa. Judge Lagoa is in Miami and Judge Martinez is in Miami. And counsel, I would advise you that we've read the briefs, we've examined the record, if that will assist you in narrowing the focus of your arguments this morning. Mr. Robinson is our courtroom deputy and I see that the counsel are ready to proceed with the first case. It is the United States of America v. Ortaz Sharp. Gabriel Mendo is here for the appellee Sharp. And Mr. Mendo, are you ready to begin with your argument? I am, your honor. Good morning. May it please the court. Gabriel Mendo for the United States. As we sit here today on direct appeal, we know that Mr. Sharp is an armed career criminal. Mr. Sharp has two undisputed ACCA predicate convictions for burglary and aggravated battery, and thus any one additional predicate triggers the ACCA enhancement. Mr. Sharp, in fact, has two predicates, one each for terroristic threats and robbery by force, and thus there are two independent errors that require his sentence be vacated. Starting with Mr. Sharp's terroristic threats conviction, wherein he threatened to commit a crime of violence, namely murder. There appears to be no dispute that under this court's binding precedent in the Oliver decision from June 2020, this conviction is a valid ACCA predicate. Thus it was error for the district court not to count it as Mr. Sharp's third qualifying conviction, triggering the mandatory minimum. Mr. Mendo, the government failed to object to the court's decision to decline to apply this terroristic threat conviction as a predicate offense, and the government should have known that United States v. Oliver was pending. Did the government have asked the court to change its mind? I'm not sure what you mean by pending. The court had published a I believe that the office that handled that conviction had moved the panel for rehearing, but as the court knows, once the opinion is published, it's binding precedent. So the district court was bound by it and the government was bound by it as we sat there in June 2020. So it's certainly true we didn't rely on it at that time. There's no dispute there. But simply because we didn't rely on it doesn't mean that as we sit here on direct appeal, we have waived it or that it somehow puts the issue beyond this court's ability to correct. And I would point the court, first of all, to the tribute case. You don't have to object in order to avoid the waiver, object at the sentencing hearing? Well, Your Honor, we certainly objected to the failure to apply the ACCA enhancement. That much is clear because of the robbery. But no, Your Honor, we don't have to object when there is binding authority in place that is then reversed while the case is on direct appeal. And what's the best case that you have for that proposition that you're stating? That there's no waiver when there's intervening authority. Your Honor, I don't know that we got to, particularly in our brief, I would point the court to U.S. v. Durham, which is an opinion from this court from, I think it's 2015, where in fact this court held that even once you're on appeal, if there is a change in circuit authority, if there's intervening authority that overturns circuit precedent, an appellant who didn't raise an issue in an opening brief can file a supplemental brief. And here, of course, we're not even at that. We raised the issue in our opening brief. We just didn't raise it in the district court before noticing, excuse me, and we tried to raise it in the district court before noticing our appeal, but the district found it lacked jurisdiction. In other words, the doctrine of waiver doesn't make any sense where you have binding authority that it would have made it futile for us to object. It would have been error at the time for the district court to count the terroristic threats conviction. But while we're still on direct appeal, and that's the key, we're still on direct appeal, the case is still open, it is not final, either party gets the benefit of a change in intervening authority. And if the situation were the opposite, if Mr. Sharpe only had three ACCA predicates, one of which was terroristic threats, and the Oliver opinions were in the opposite direction, let's say at the time, it was binding, that it was an ACCA predicate, the court subjected him to the enhancement. And then two weeks later, this court changed its mind and said, No, it's not a valid ACCA predicate. There is no doubt that this court would and should vacate his sentence as illegal. The same applies here that the parties get the same benefit on direct appeal, the sentence is illegal, it is more than is nearly six years below the mandatory minimum. And so the board would have the district court would have jurisdiction to consider a motion for reconsideration after a notice of appeal is filed. No, Your Honor, I think the district court is probably correct that we had to we had to come to this court at that point. I think that's right that this under this posture where this court reverses the precedent, it's after the Senate saying it's too late for us to do a 35. A, we have to come to this court to fix the error. I think that is that is correct. And if the situation were in what case do we rely upon to find that proposition? We run I think that's that's just simple appellate review that's this course jurisdiction. And again, that's whether it's de novo, or whether it's plain air. So I would point out also, even if the court finds that we didn't preserve the issue that doesn't make it unreviewable, that would just change the standard review to plain air. And here we would have plain air, because we have an error that we is plain, as made clear by this court's precedent. And Oliver, it affects the substantial rights of the government and the people by subjecting a defendant to an unlawful sentence nearly six years below a mandatory minimum. And it meets the fourth prong because that shows a disregard for the law diminishes the fairness of the criminal sentencing scheme and undermines the integrity of the judicial system. So our position is no matter which standard of review you apply, the error is reviewable, and it has to be corrected. How do we handle the fact that the motion for reconsideration was filed four days after the following deadline? We're not appealing the denial of the motion for reconsideration, we're appealing the sentence itself. Our position here is not that the court erred when it denied the motion for reconsideration, the court may have been correct, that at that point, it no longer had jurisdiction. And instead, we had to come to this court to have the error fixed. So our position here is, is that the sentence was was incorrect, that the sentence was unlawful, because of the mistake, an understandable mistake, but there's been a change in binding authority. What if the Oliver decision came a year and a half or two years later? Then the government would be out of luck, Your Honor. Why? Because at that point, our time for filing a direct appeal has lapsed, we would be in post conviction land and, and under, you know, the statute, we don't have the ability to file a 2255. You know, Mr. Oliver, excuse me, Mr. Sharp might have had the ability to do so, but we would not. It is only because we are on direct appeal that we are able to obtain the benefit of the current law. May I ask you a question? Do you have any authority for the proposition that a defendant can be sentenced under the ACA enhancement based on a later appearing predicate offense? Your Honor, I don't, I don't know that we have this situation. Now, where the court has ruled that something was not a valid predicate, and then changed his mind and went the other direction. There's precedent the other way, or, you know, defendants have had the benefit of, of intervening changes of authority, but I don't know that I have one that's like this. Of course, the way this works is his, his terroristic threats predicate was always a valid predicate. It's just that at the time of sentencing this court, the court's precedent said otherwise, but under the, under the Oliver decision, that opinion was vacated and the law now is that that was always a valid predicate. And so I would turn also to Mr. Sharp's robbery by force conviction, which is an independent basis for reversing the district court's sentence. The district court erred when it found that that statute is not divisible. Whether the court looks at the second prong of Mathis relying on the Georgia case law, or the third prong of Mathis looking at the record of the conviction itself, you see that this is a divisible statute. And I would refer the court to the Oliver decision because Judge Wilson's opinion in that case provides a terrific roadmap for applying the divisibility analysis. And when you look at the Georgia cases, you see that these three grades of robbery are distinct. They have different elements of proof that have to be found unanimously. And I'd point you to two Georgia Supreme Court cases. The first is Pride versus State, which says it's reversible error for a trial judge to instruct on a grade of robbery, not charged in the indictment. And I'd point you to Nelson versus State, which shows that prosecutors charging a violation of the statute don't charge robbery. They charge robbery by force, or robbery by intimidation, or robbery by sun snatching, each grade of which has distinct elements of proof that must be supported by the evidence and must be found by the jury. But again, even if that case law is not clear, or as the district court said, it's a close call, that does not end the analysis. Instead, and this is where Judge Wilson's opinion in Oliver is so instructive, you go to the third step of you look at the underlying documents of the indictment shows defendant is charged only under one portion of the statute to the exclusion of the other types, it shows the statute has divisible elements. And that's exactly what you have here. If you look at Mr. Sharpe's 2007 indictment, it shows the state of Georgia charges him with robbery by force to the exclusion of any other type of robbery. You further confirm that if you look at his other robbery conviction, that's not a qualifying predicate. His 2011 robbery conviction, he's charged with robbery by sudden snatching to the exclusion of any other element. So as this court put it in Oliver, exclusion of the other types of robbery shows that the statute quote, contains a list of divisible elements, each of which constitutes a separate crime. So the Georgia robbery statute divisible, the modified categorical approach applies. And Mr. Sharpe's robbery by force conviction, which is what the Supreme Court has called the quintessential ACA predicate, triggered the ACA enhancement and the 180 month mandatory minimum. Thank you. All right. Thank you, counsel. Mr. Johnson. You may proceed. Thank you, Your Honor. Good morning. The district court correctly held that Mr. Sharpe's Georgia robbery conviction was not an active predicate. And accordingly, the Mr. Sharpe was not an on reasoning it employed in reaching this decision. The only party that dead air was the government. There were multiple instances, multiple opportunities where the government had could have objected to Mr. Sharpe's terroristic threats conviction being a non active predicate. But the government chose to remain silent. And accordingly, the government waived the terroristic threats issue. Now, if it is fine with the court, I would like to first address why Georgia robbery is not an active predicate, and then address why the government waived its terroristic threats issue. And if that is fine with the court, I'll proceed with the the robbery by means of force conviction. See, that's your toughest, that's your toughest one. So we'd like to hear about that. Well, thank you, Your Honor. Because when I look at the indictment, doesn't it support that the statute is divisible? I mean, he's charged specifically with robbery by force, alleging that he did unlawfully with intent to commit theft by the use of force take the victim's property from this person in immediate presence. How do you overcome that? Your Honor, we don't actually get to Mr. Sharpe's indictment. That is the third math of steps. And under math is we only get to the third step. If under the first and the second step, there is still an open question of divisibility versus indivisibility. Now let's look at that first step, this text of the statute itself. In 1968, Georgia robbery, the statute was amended to impose a single penalty on the various methods of committing robbery. Now under math is when you have a single penalty that is imposed for various methods of committing a crime. Under math is this is a strong indication that the statute is indivisible. And that's what we have here. But isn't but it's but you're talking about methods, but at the end of the day, there's lesser included offenses, but the lesser included offenses have different elements, don't No, they do not. The lesser these are not robbery by intimidation is a lesser included offense. But what the question we have to answer is, looking at the statute, looking at the state decisional law and the jury instructions, are we looking at elements or means? Are we looking at separate crimes contained in the statute, which are elements? Or are we looking at various means or just ways to commit a crime now, by having a single penalty for these various methods indicates that the statute is indivisible. But also, if the court is still uncertain, even after that first test, we look at the state decisional law, and we look at the jury instructions. And I filed in a supplemental 28 J supplemental filing, the Owens case. Now, Owens, the Georgia Court of Appeals held that quote, it is well established that robbery by force and violence on the one hand, and by intimidation, on the other hand, are not separate offenses, but are different grades of the same offense. And then the Georgia Court of Appeals and sets are affirmed that hold it. I also cited Hogan. And if you take anything from my argument today, please remember Hogan, the Georgia Court of Appeals held in Hogan, that OCGA section 16 dash eight dash 48, this is the robbery statute establishes one crime of robbery, which may be committed by use of force by intimidation, or by sudden snatching. And in Hogan, what the Georgia Court of Appeals with was confronted with the following issue. And the appellant said that the Georgia DUI statute new statute Georgia DUI statute, what contained multiple elements contain multiple crimes, and the Georgia Court of Appeals was required to determine, well, did the DUI statute contain multiple ways, multiple crimes, or simply multiple ways of committing a single crime? And in order to Georgia robbery statute, because the Georgia robbery statute defined a single crime and multiple methods of committing that crime. Now, that's the cases the government sites, Nelson, pride, and Heath. They do not stand for what the government is claiming. What those three cases simply hold is that if a Georgia prosecutor so chooses, they can charge one of the methods of committing robbery. And if they choose that method, then that method, that method alone must be presented to the jury. But the government has not cited a single case or cited a single law, which which holds that a prosecutor is required is required to charge a single method, or is required to present that single method to the jury, that it just does not apply. So is if the prosecutor so chooses, they can do so, but they are not required. And that was the type of reasoning and that that this court employed in to find that Georgia burglary was an act of predicate, because in Georgia burglary, a prosecutor is required to choose one of those methods, or is required to choose that it's either a burglary of a residence, or a commercial press, but that's not here. And if we look at the jury instructions, it provides even greater indicia and even greater indication that this simply provide three elements to that are given to a jury, that for robbery, the state must prove that a defendant took another person's property, that's one to directly from the other person, or from the other person's immediate presence. And then the third element just has a laundry list of ways robbery can be committed by force by sending snatching by intimidation by threat, but aren't those elements because when you read the appellate cases from Georgia, like my lander or the other ones that you cited, you talk about they talk about the essential elements being contained in the indictment, but also that, for example, you call it methods, but robbery by sudden snatching does not involve the use of a weapon. So therefore, that is not an element for that particular crime of robbery. Well, let's talk about a method as an element. So if you do robbery with a weapon, that's a different crime versus robbery by snatching. Well, to clarify the robbery by intimidation, and especially in the jury instructions, in 2017, robbery by intimidation, that jury instruction was eliminated by from the pattern jury instructions. And robbery by intimidation, it's unique because robbery by lesser included offense of robbery, but it was also a lesser included offense of armed robbery. And I believe that is why that lesser included defense was included in the jury instructions up until 2017. But if we look at millinder, that court in millinder, the Georgia Court of Appeals held that generic robbery, that jury instruction can be presented abroad to the jury. Again, there is simply no requirement that any of these methods and I will use methods because that is the term that the Georgia Court of Appeals uses. There's no requirement that these methods be presented exclusively to the jury. In Georgia, a prosecutor can charge robbery, they don't have to specify the means of committing robbery. And they don't have to specify in the jury instruction what means that were accomplished. And the government cited no case to support that proposition. They have cited cases that just simply state that a prosecutor can choose to present. So this is the analysis what the district court undertook. It was the same analysis that the Fourth Circuit undertook in Fluker, that the Northern District of Florida took in Cochran, that here in the Northern District of Georgia took in North. And all three of these courts found that Georgia robbery was not an act of predicate. And this is the exactly the same analysis that the district court took in Mr. Sharpe's. It was a reasoned, principled process, rooted in precedent and rooted in the text of the statute, the state decisional law, and the jury instructions. And for those reasons, we do not get to that third part under Oliver II. Now, going to and if you and before moving on, does the court have any other questions about Georgia robbery? Because I don't want to leave any, any threats hanging. Okay, I will take that as a no. And we'll move on to why the government is not allowed to argue and appeal that Mr. Sharpe's terroristic threats conviction is an act of predicate. The government had three opportunities to argue and to file an objection that the terrorist threats conviction was an act of predicate. When the pre sentence report was issued, all the government had to do was say, we think the act we think the terrorist threats conviction is an act of predicate. When they were filing the sentencing memorandum, they could have easily articulated that objection. And at the sentencing hearing, all they had to do was say, Your Honor, terrorist threats conviction is an act of predicate. This is not a high threshold to make. I know that because I did the same thing in objecting to my client's burglary conviction being an act of predicate. I knew the status of the law, but I wanted to preserve it. Now, what the government said in their opening was argument is that they did not quote, they did not know what the panel would do in the rehearing. Well, that's why you file an objection. That's the obligation put upon the government. When Mr. Sharp was indicted, the terrorist, his terrorist threats conviction was an act of predicate. When the pre sentence report came out, it was not. And when he was being sentenced, the panel was rehearing that decision. And that rehearing was initiated by a government. But the question I have, though, is, at the time that they made the argument, Oliver one was binding precedent, correct? Yes, Your Honor. Okay. So when the government in another case moved for rehearing, that was existing binding precedent. So what was the government supposed to do in another in another case, they were going to supposed to preserve an issue that is binding precedent? That's exactly what they're supposed to do, Your Honor. I did the same thing under Gandhi. And this is what why the government fails is that if they thought the terrorist threats conviction should count, then they should have said so. And when they're Can you repeat that again? I'm sorry. I so apologize. When the government are the sentencing, if they believe the terrorist threats conviction should have counted, they should have said so. Under the But may I ask you a question before you leave that? Do you do you concede that it would count? If Mr. Sharpe was being prosecuted for felony possession, that terrorist threat conviction would now count. But again, it did not count at the time of sentencing. And listen, this court has oftentimes found that a party is at a loss when they procedurally waive an argument, especially if you look at the AEDPA case law, pro se petitioner files an appeal, it's denied, then they get an attorney, they try to file a second successive and this court says And may I ask you another question that which is and I and I apologize, because I didn't actually look at this issue. The the government who was moving for rehearing in Oliver to was it the same the same US Attorney's Office or a different US Attorney's Office? It was a different US Attorney's Office, your honor. So are you presuming then that the government should know everything that the government is doing and all the US Attorney's Offices? I'm presuming that the government could file could easily do a quick rest law check to see if Oliver one was up for rehearing. I think that is the bare minimum. And so and also with the gut and I see my time is running out. The government's I'm just kind of curious about that. Because let's say for example, you're at a big law firm, let's not do a criminal case, but a civil case, and you're in a big law firm, and a partner at, you know, ABC law firm in Atlanta, files a motion for rehearing on a particular issue that's of interest to another partner in ABC law firm in in Miami. Are we going to hold them accountable also? Well, I think in a civil context, it is different, but we got to we must look at this in the criminal context. The government does not have a vehicle to preserve this issue on appeal. Plain error does not apply to the government. I know it does not explicitly say the plain error is not extended to the government and rule 52 B. But the Supreme Court in United States versus a lot of made it very clear that the burden on plain error rests with the defendant. And that is so because under the four prongs of plain error, it is there is an error, it is plain, and it affects the substantial rights of a party. I am amiss to find what substantial rights is affected by the government, the government does not have substantial rights to preserve. And what the government is attempting to do. And if I could finish as if the government is attempting to do a run around, they're trying to avail themselves to a plain error test that is excluded, that is available only to the defendant. And if the court allows this error, to go back to the district court allows this failure by the government, then they are opening to the door of allowing plain error to extend to the government where it has not done so before. I thank you so much for your time. Thank you, counsel. And Mr. Mandela, you have reserved some time for rebuttal. Yes, I'd start where my colleague finished. plain error absolutely applies equally to the government. I'll point this court to the decision in United States versus Clark. It's a published decision from 2001. There the defendant pled guilty to air piracy with a mandatory minimum of 20 years. At sentencing, the government erroneously conceded that the district court had authority to depart downward. The district court did so and sentenced him to 150 months. The government then appealed and said, Ah, we were wrong. Our concession was wrong. The district court did not have that authority. This court did not find it was waived. But it also did not apply to no will review and said it applied plain error review. And I'm going to give the court a direct quote because Mr. Johnson has just claimed that the government does not have substantial rights under plain error. Here's a direct quote from this court's president. The circumstances presented in this case result in a violation of the government's substantial rights. Indeed, the district court's imposition of a sentence that is less than two thirds of the statutorily required minimum shows a disregard for governing law, diminishes the fairness of the criminal sentencing scheme by allowing disparate sentences to be imposed on similarly situated defendants and undermines the integrity and public reputation of the judicial system. End quote. So there's no doubt that plain error applies as this court held in United States versus Santiago from this year. This is a quote. Plain air standard applies equally to a challenge by government. So even if this court credits the notion that we had to preserve this issue by objecting, that we failed to preserve it, it does not put it beyond the review of the court. Instead, it is plain air, just like in Clark, just like in Santiago, and shepherding those cases finds a bunch more decisions. It doesn't happen a lot. But I'd point out in Clark, to the extent that the court is troubled by the government's failure to object in the face of binding precedent here, in Clark, the government conceded, and then there was no intervening change in authority. We just realized we'd made a mistake here. To the contrary, it would have been futile for us to raise this. And though Mr. Johnson notes that he preserved the burglary issue, he didn't need to for purposes of direct appeal. If this court, two weeks after sentencing, had vacated Gundy and reversed it, and said burglary doesn't count, then as we sit here today, this court would absolutely be not just able to, but required to vacate his sentence. So while you are on direct appeal, a change in binding authority applies to this case as it stands, even if it was not preserved below. Turning to robbery. If I could ask you a question, you're turning to robbery. Yes, Your Honor. If the judge here found that the robbery statute was indivisible, and if we rejected that argument, we would have to disregard the Fourth Circuit's decision in the United States versus Pfluger and create a circuit split? Yes, Your Honor. The Fourth Circuit got it wrong, just like they did a year later when they found that Georgia burglary is not divisible, even though this court and the Sixth Circuit had already found that it was. To put it gently, the categorical approach is not for the faint of heart. It's not easy. There are circuit splits all over the place. And frankly, yes, the Fourth Circuit just got it wrong. When you look at the cases that Mr. Johnson cites, which, by the way, are Georgia intermediate appellate cases, they must defer to the Georgia Supreme Court. You will not find a single case where a defendant is charged with just robbery. As this court noted in Gundy when it looked at burglary, every single case cited by us, every single case cited by Mr. Sharp, the prosecutor must charge robbery by force, or robbery by intimidation, or robbery by sudden snatching. And Mr. Johnson, two arguments actually contradict, because he cites the language of these cases from pre-1968, when it's understood there were different punishments, and therefore it was divisible. I'm sorry, Your Honor. Don't these, I mean, creating these circuit splits, it just contributes to an already confusing non-career criminal statute. That is undoubtedly true, Your Honor. And I wish there was a way to avoid it, but it is the world that the Supreme Court and the Congress have left us with. This court's obligation now is simply to apply the law as Mathis and as Oliver dictate, which is to find that this is divisible and that the sentence needs to be vacated and remanded. I thank the court for its time.